**UNITED STATES DISTRICT COURT**
**DISTRICT OF MAINE**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA, ex rel.** | ) | |
| **BRIAN EMERY,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **No. 2:14-cv-00483-DBH** |
| | ) | |
| **BELCON ENTERPRISES, INC., f/k/a** | ) | |
| **ROOF SYSTEMS OF MAINE, INC.,** | ) | |
| | ) | |
| **Defendant** | ) | |

**RECOMMENDED DECISION ON MOTION FOR AWARD OF ATTORNEYS' FEES**

Following the settlement of this *qui tam* action, Brian Emery (the "relator") seeks an award of attorney's fees and expenses in the amount of $83,715.25. Relator's Motion for Award of Attorneys' Fees and Expenses Pursuant to 31 U.S.C. § 3730(d) ("Motion") (ECF No. 27) at 10. The defendant, Belcon Enterprises, Inc., maintains that only an award of $12,031.17 is justified. Defendant's Response to Relator's Motion for Award of Attorneys' Fees and Expenses Pursuant to 31 U.S.C. § 3730(d) ("Opposition") (ECF No. 30) at 10. Adjusting his demand to add the time spent in connection with the motion and deleting certain entries challenged by the defendant, the relator in his reply requests an award of $101,707.00 in attorney's fees. Relator's Reply Memorandum in Support of 31 U.S.C. § 3730(d) Motion for Award of Attorneys' Fees and Expenses ("Reply") (ECF No. 33) at 7. I recommend that the court award a reduced amount of $65,771.25.

The applicable statute provides, in relevant part, that when, as here, the government proceeds with an action brought by an individual as a *qui tam* action, the person who brought the

action initially, "shall . . . receive an amount for reasonable expenses which the court finds to have been necessarily incurred, plus reasonable attorneys' fees and costs." 31 U.S.C. § 3730(d)(1).[1] The defendant concedes that the attorneys who represented the relator in this action are entitled to recover some amount of fees under this statute.

## I. Discussion

The relator's attorneys, one in a Maine firm and a second who was a member of two different out-of-state firms during the life of the action, submitted with the motion affidavits and timesheets in support of their request. ECF Nos. 27-1 27-3, 27-5, 27-6, & 27-7. After the defendant pointed out that the attorneys had provided no documentation of the $2,575.52 that they claim in expenses other than a $400.00 filing fee, Opposition at 10, the attorneys submitted documentation of all but $51.07 of the claimed amount "[t]o the extent additional documentation may be necessary[.]" Reply at 1 n.1. Documentation of all claims for reimbursement or recovery by prevailing parties is necessary. *See generally United States v. State Farm Fire & Cas. Co.*, Civil No. 1:06CV433-HSO-RHW, 2014 WL 691500, at *20 (S. D. Miss. Feb. 21, 2014) ("Due to the sparse detail contained in the . . . expenses spreadsheet, the Court finds that the majority of the expenses sought lack adequate support and should be excluded.")

### A. Expenses

Because the relator's attorneys failed to submit documentation for any claimed expenses with their motion, I recommend that the court not order the defendant to reimburse any of those expenses. *See, e.g., State Farm, id.; United States v. Noble Jewelry Holdings Ltd*., No. 08 Civ. 7826(JGK)(KNF), 2013 WL 1228199, at *1, *5-*6 (S.D.N.Y. Apr. 9, 2012). The request for

---

[1] In this district, costs, as distinct from attorneys' expenses, are awarded by the clerk of court. "Costs" and attorneys' "expenses" are separate categories of recovery under 31 U.S.C. § 3730(d). *United States v. Lockheed Martin Corp.,* 558 F.3d 1161, 1172 (10th Cir. 2009).

reimbursement of the $400.00 filing fee is an item traditionally included in costs of suit rather than attorney expenses and, therefore, should be addressed to the clerk of this court, which has reserved ruling (ECF No. 34).

## B. Attorneys' Fees

The parties agree that the lodestar method is to be used in determining the appropriate amount of attorneys' fees to be awarded to a successful relator under the False Claims Act. Motion at 4; Opposition at 1. This approach requires that the court first calculate the number of documented hours reasonably expended by the attorneys seeking payment. *Matalon v. Hynnes*, 806 F.3d 627, 638 (1st Cir. 2015).[2] The court should exclude hours that are excessive, redundant, or otherwise unnecessary. *Id.* The court must then determine a reasonable hourly rate or rates for the allowed hours, "a determination that is often benchmarked to the prevailing rates in the community for lawyers of like qualifications, experience, and competence." *Id. (quoting Central Pension Fund of the Int'l Union of Operating Eng'rs & Participant Emp'rs v. Ray Haluch Gravel Co.*, 745 F.3d 1, 5 (1st Cir. 2014)). The resulting numbers are multiplied to yield the lodestar amount, which the court may then adjust based on other factors. *Id.*

Clerical or secretarial tasks should not be billed at lawyers' hourly rates; work performed in preparing and litigating fee petitions may be calculated at discounted rates "due to the comparative simplicity of the task." *Id.* at 639.

The defendant has challenged several entries in the timesheets submitted by the relator. I will discuss them in the order presented by the defendant. The relator responds only in general terms rather than to each cited instance.

---

[2] The lodestar method has been applied to fee requests brought under 31 U.S.C. § 3730(d) in other circuits, *e.g., United States v. Jadhav*, 555 F.3d 337, 356-57 (4th Cir. 2009), although, apparently, not yet in the First Circuit.

### 1. Phillips & Cohen Partner Time

The defendant begins with entries for Attorney McCormack dated September 17-18, 2014, and December 15-16, 2014. Opposition at 2. It complains that the relator has not presented sufficient detail to allow a reviewer to determine how many of these hours were spent in travel, which has commonly been compensated at half the time actually spent traveling. *Desena v. Lepage*, 847 F.Supp.2d 207, 212 (D. Me. 2012). It asks that the time charged be reduced by 13.25 hours. Opposition at 2.

The relator agrees that travel time should be awarded at half of an attorney's "regular hourly rates." Reply at 5. He "concedes that Mr. McCormack's September 18 and December 17 time entries may be reduced by half," that his entry for September 17 may be reduced by 3.6 hours, and his entry for December 16 by 5.2 hours. *Id.* The total reduction in McCormack's requested hours is 13.4 (including reduction of 2.4 hours for September 18 and reduction of 2.2 hours for December 17, *see* Exhibit A to Declaration of Stephen S. Hasegawa, Esquire in Support of Relator's Motion for Award of Attorneys' Fees and Expenses ("First Hasegawa Decl.") (ECF No. 27-1) at [3]). All of these hours were billed at a rate of $675.

The defendant next questions McCormack's entries dated October 23-29 and November 4, 10, and 13, 2014. Opposition at 2. Specifically, it contends that 20 hours should be deducted from the entries for these dates that relate to the writing of the complaint. Opposition at 2. McCormack assigns 23.3 hours to these activities, Exhibit A to First Hasegawa Decl. at [2],[3] and the relator's local counsel, James B. Haddow, assigns an additional 4.3 hours of his time and 8.1 hours of the time of Kimberley Watson, a second-year associate attorney at his firm, to the drafting of the 72-

---

[3] Some of the entries for the relevant dates include additional activities, other than work on the complaint, but the time devoted to the complaint is not separately identified.

paragraph complaint. Exhibit A to Declaration of James B. Haddow, Esquire in Support of Relator's Motion for Award of Attorneys' Fees and Expenses ("First Haddow Decl.") (ECF No. 27-5) at 1-2.

A total of 35.7 hours to draft the complaint in this case,[4] even allowing for the built-in additional time spent when more than one law firm is involved in the drafting, is excessive. The relator devotes much of his response on this point to an argument that the fact that more than one lawyer worked on the complaint does not mean that excessive staffing or excessive time was involved. Reply at 3-4. I do not read the defendant's submission to argue that the use of three lawyers to draft this complaint was in itself excessive. Rather, the issue is whether the total time charged for this activity was excessive.

On the merits, the relator asserts that the complexity of underlying events required an initial, factual draft by the local lawyers followed by "edits, revisions, and redrafting" by lawyers experienced with *qui tam* cases to render the information manageable and easy for government lawyers and investigators to follow "without sacrificing thoroughness or completeness." Reply at 4. I doubt that a *qui tam* complaint can only be adequately drafted by lawyers at a "national" specialty law firm. That doubt aside, however, the total hours charged, even granting the need for national expertise in doing so, are excessive.

The defendant's suggestion that 20 hours should be deducted from the total charged to this task is not particularly helpful, because each of the lawyers involved billed time at a different rate. Deducting all 20 hours from McCormack's billed time would leave only 3.3 hours reimbursable for his participation in drafting the complaint. That great a deduction is not reasonable. Accordingly, I reduce McCormack's time by 10 hours and Watson's by two hours.

---

[4] I do not include in this number billed hours of research before the complaint was drafted.

The defendant next challenges billing entries reflecting teleconferences about case status. Opposition at 3. It asserts that many of the teleconferences occurred "without any intervening developments or work on the case[,]" and that fees for teleconferences are "routinely reduced or disallowed[,]" particularly when insufficient documentation is presented in support. *Id.* It asks the court to deduct all 5.8 hours that it identifies as such deficient entries in McCormack's time records. *Id.*

The relator responds that the defendant has failed to identify the particular teleconferences to which it objects and that the teleconferences were held, "approximately an hour per month[,] . . . to facilitate contact between relator and government, keep abreast of the government's progress, and keep the client informed of the status of the government's investigation process[.]" Reply at 2.

It is true that the Phillips & Cohen time sheets record more than 5.8 hours that could be telephone conferences in which McCormack participated; but the objection is only to teleconferences not included in entries to which the defendant has already objected, only to teleconferences "mostly concerning 'case status,'" and at least between January 23, 2015, and June 4, 2015. Opposition at 3. These criteria readily identify some of the calls at issue as those dated January 23, February 9, February 10, March 5, March 6, March 9, March 19, May 4, May 7, and June 4, 2015, Exhibit A to First Hasegawa Decl. at [3], which by my calculation add up to 4.2 hours. The remaining 1.6 hours are not so easily identified. I agree with the defendant that there is no explanation given for the need to speak with the relator concerning the status of the case on both January 23 and February 9, with no intervening activity, but the other identified calls appear to be reasonably explained by the relator, given their respective temporal proximities.

While the relator's uninformative entries describing these calls would allow this court to disallow all of the teleconference entries, *see, e.g., Weinberger v. Great Northern Nekoosa Corp.*, 801 F.Supp. 804, 818-19 (D. Me. 1992) (disallowing 80% of billed telephone calls for this reason), *Walsh v. Boston Univ.*, 661 F.Supp.2d 91, 107 (D. Mass. 2009) (disallowing all hours billed for this reason), I conclude that, on the showing made, only a reduction of 0.2 hours is indicated. The length of each of the billed calls appears reasonable, and the defendant has not shown which calls it challenges other than those discussed specifically here.

## 2. Phillips & Cohen Associate Time

The defendant contends that the entries dated October 23 and 24, 2014, described as "research on construction complaint language" and claiming 5.3 hours, are too vague to allow recovery. Opposition at 3. It also asserts that the associate's research recorded here is duplicative of research for which McCormack billed. *Id.* "The First Circuit requires that courts view with skepticism any claim that a case required the work of several lawyers to perform a single set of tasks." *Nelson v. University of Maine Sys.*, 944 F.Supp. 44, 48 (D. Me. 1996).

The relator does not respond to this argument, other than making the conclusory statement that "there was very little, if any, duplication of effort[,]" when discussing the complaint and the disclosure statement. Reply at 4. For a law firm composed of experts in the field of *qui tam* litigation, First Hasegawa Decl. ¶ 6, 5.3 hours of an associate's time and up to 4.1 hours of a partner's time, Exhibit A to First Hasegawa Decl. at [2], for research before drafting a fairly straightforward complaint (ECF No. 1), already at least partially drafted by others, Declaration of James B. Haddow, Esquire[,] in Support of Relator's Motion for Award of Attorneys' Fees and Expenses ("First Haddow Decl.") (ECF No. 27-5) ¶ 8 & Exh. A at 1-2 (up to 9.6 hours), appears to be excessive. The Phillips & Cohen associate's time will be reduced by 2.3 hours.

The defendant next challenges an entry for 2.9 hours of associate time dated November 18, 2014, that reads "disclosure statement," pointing out that a partner also billed 3.6 hours for preparation of the disclosure statement. Opposition at 3; Exh. A to First Hasegawa Decl. at [2]. It also contends that the description of the associate's activity is "too vague." *Id*. The relator responds only that the disclosure statement "consisted of 12 pages of text and 197 pages of documentary exhibits." Reply at 4. I note that 8.0 hours of paralegal time is also billed for the preparation of the disclosure statement. Exh. A to First Hasegawa Decl. at [2]-[3]. Organization of documentary exhibits is a paralegal task. Assuming that all of the billed attorney time was devoted to the creation of the disclosure statement, neither party has provided a copy of the disclosure statement to the court, so I am unable to determine whether 6.5 hours of attorney time is excessive for the creation of that document.

The defendant moves on to contest entries dated January 16-20, 2015,[5] which total 6.5 hours for "LEED" research. Opposition at 3. It asserts that this work was "entirely unnecessary," because the complaint was never amended to include LEED requirements; the entries are "entirely generic and duplicative, with no description of [the] nature of the actual research performed; and that the billing records show that LEED research was also conducted by a paralegal, so that all such research should be billed at paralegal rates, rather than the hourly rate of an associate attorney." *Id*. at 3-4. The relator does not respond to this argument.

In the absence of a specific response, and because the defendant's argument is supported by the submitted timesheet, Exh. A to First Hasegawa Decl. at [3], 6.5 hours of associate time will be excluded.

---

[5] The defendant refers to these entries as being dated January 16-20, 2014, Opposition at 3, but that appears to be a typographical error. The dates on the timesheet are in 2015. Exhibit A to Hasegawa Decl. at [3].

### 3. Phillips & Cohen Paralegal Time

The defendant contends that fees for paralegal work may not be recovered in this district, citing *St. Hilaire*. Opposition at 4. The relator responds, Reply at 3, correctly, that *St. Hilaire* bars recovery only for paralegal work consisting of "clerical tasks properly attributable to firm overhead." *St. Hilaire*, 416 F.Supp.2d at 147. He agrees that 1.5 hours of the charged paralegal time, incurred on December 15, 2014, should be excluded on this basis. Reply at 3. In the absence of any specific argument addressed to any of the paralegal charges by the defendant, there is no basis upon which to exclude any other paralegal time.

### 4. Constantine Cannon Partner Time

The defendant challenges 6.5 hours charged by McCormack while he was at Constantine Cannon for emails and telephone conferences. Opposition at 4. It asserts that neither the subject matter nor the need for these events has been specified and that courts have "routinely" disallowed attorney fees for such entries. *Id.* The relator's response, like the defendant's argument, is the same as that addressed to the telephone conferences in which McCormack participated at Phillips & Cohen, which is discussed above. Opposition at 2-3. As was the case with the Phillips & Cohen objection, the defendant does not identify the specific emails and teleconferences among the total 9.75 hours charged by McCormack that it contends must be disallowed.

My own review of the timesheet report submitted by McCormack addressing his time with Constantine Cannon (ECF No. 27-2, Exh. A to Declaration of Timothy P. McCormack, Esquire[,] in Support of Relator's Motion for Award of Attorneys' Fees and Expenses ("First McCormack Decl.") (ECF No. 27-1)), leads me to conclude that only 5.0 hours meet the defendant's description of the allegedly nonrecoverable entries (having insufficient descriptions of the subject matter and occurring without intervening developments or work on the case). Contacts concerning witness

interviews, damages, and settlement are sufficiently described. The entries described only as concerning "case status" are sufficiently separated in time, without more, to undermine the defendant's assertion that they occurred without any intervening developments or work on the case, including work by individuals other than McCormack, or its speculation that the conferences and emails were "simply . . . 'strategy' conferences[.]" Opposition at 4. No reduction is made in this category.

### 5. Constantine Cannon Associate Time

The defendant next challenges 5.0 hours charged for work by Molly B. Knobler, Esquire, "relating to a damages memo," because McCormack "researched and drafted and edited his own damages analysis," rendering Knobler's work "duplicative and unnecessary." Opposition at 4-5. It identifies the challenged Knobler entries as those dated January 8-11 and 13-14, 2016, and McCormack's entry on January 7, 2016. *Id.* The relator does not respond to this argument.

The McCormack entry at issue is for 2.25 hours described as "[r]esearch and edit damages analysis; teleconference with Relator re: same." Exh. A to First McCormack Decl at [5]. The challenged Knobler entries are the following:

January 8, 2016: 1.5 hours to "[r]eview and revise damage analysis memo[.]"

January 11, 2016: 0.25 hours to "[e]mail client with revised damage summary for review[.]"

January 13, 2016: 2.0 hours to "[r]evise damages analysis and prepare exhibits."

January 14, 2016: 1.25 hours to "[r]evise damage summary and exhibits."

*Id*. at [10]-[11].

First, preparation and revision of exhibits is not within the timesheet's description of McCormack's activity. Next, since all of Knobler's entries occur after that of McCormack, it is at

least as likely that she was revising his first draft as it is that she was duplicating any of McCormack's activity. Third, McCormack's entry cannot reasonably be read to encompass an email to the client with respect to damages, nor can it be assumed that the email duplicated McCormack's telephone conversation with the client four days earlier, given that Knobler made revisions to the damage analysis in the interim.

While the relator's failure to respond to this challenge is troubling, the defendant has provided only a conclusory assertion that the entries are duplicative, a status that is not necessarily established by the entries at issue. The defendant does not suggest that a total of 7.25 attorney hours on this issue is itself excessive.

The defendant also challenges 2.0 hours of Knobler's time on March 3 and 4, 2016, as excessive (two hours to send two emails) and as constituting administrative work which should not be billed as attorney time. Opposition at 5. Again, the relator does not respond. I agree that .75 hour to "email settlement agreement to client for signature" and 1.25 hours to "obtain and send signatures on settlement agreement to AUSA," Exh. A to First McCormack Decl. at [15]-[16], describe administrative tasks that should be included in a law firm's overhead and, therefore, are not recoverable.

### 6. Petruccelli, Martin & Haddow Partner Time

The defendant objects to several entries in the billing records of Petruccelli, Martin & Haddow for James B. Haddow, Esq. Opposition at 5. First, it contends that 1.2 hours "related to research performed on a party whom he did not prevail against"—specifically, named defendant Kevin Griffin—cannot be recovered. *Id*. at 5-6. It does not explain how the entry for September 23, 2014—"[i]ntra-office conference re collectability of potential judgment"—necessarily relates only to Griffin. The relator responds that he is entitled to recover fees "for all time reasonably

spent on a matter, regardless of whether some of the time was spent on research about issues that were ultimately unproductive or mooted by intervening events[,]" citing, Reply at 6, a Sixth Circuit case, *Northcross v. Board of Educ. of Memphis City Schools*, 611 F.2d 624, 635-36 (6th Cir. 1979).[6] Haddow explains that the research was undertaken because Griffin was terminally ill and "there was a question about what tangible assets the company owned that might be available to satisfy any eventual judgment." First Haddow Decl. ¶ 15.

The defendant cites *Diaz v. Jiten Hotel Mgmt., Inc.,* 704 F.3d 150, 153 (1st Cir. 2012), for the proposition that hours spent on unsuccessful claims should not be included in recoverable attorney's fees. The problem, however, is that the defendant has made no showing that the September 23 entry related to a claim against Griffin rather than a claim against Belcon, about which a reasonable relator would have likely performed research on its ability to satisfy an anticipated recovery in any event. The other entry challenged by the defendant in this regard, December 22, 2014, described as email exchanges with the relator and with the opposing attorney concerning the impact on the case of Griffin's death, does not charge for research on any claim nor address "collectability of [any] judgment." Particularly given Haddow's explanation, I see no reason to strike this time from the request.

The defendant next challenges four entries for Haddow's time, unknown portions of which were devoted to the relator's state-law claims, for which it contends that recovery is unavailable under the False Claims Act. Opposition at 5. The relator replies that "Belcon was first to raise the issue of resolution of the outstanding state law claims as part of a global settlement" and that Petruccelli, Martin & Haddow "became involved in those claims exclusively at Belcon's behest."

---

[6] Abrogation on other grounds recognized, *L & W Supply Corp. v. Acuity*, 475 F.3d 737, 739 n.6 (6th Cir. 2007).

Reply at 5-6; *see also* First Haddow Decl. ¶ 18. On the showing made, the defendant is not entitled to relief from the claim for these 8.4 hours.

Next, the defendant objects to 15.1 hours, otherwise unspecified, the entries for which all merely reference "office work," for which the court would not be able to ascertain the nature of the work performed, let alone its necessity or reasonableness. Opposition at 5. The relator responds that a supplemental affidavit submitted by Haddow "answers the challenges raised by Belcon" regarding these entries. Reply at 5. That affidavit includes an exhibit described as "annotating" the originally submitted time sheet summary. Exhibit A (ECF No. 33-5) to Supplemental Declaration of James B. Haddow, Esquire[,] in Support of Relator's Motion for Award of Attorneys' Fees and Expenses ("Second Haddow Decl.") (ECF No. 33-4). However, the "annotation" of the summary timesheet consists only of highlighting on 10.5 hours of entries. ECF No. 33-5. That addition does not explain the nature of the "office work" that was performed. The two summaries are otherwise identical. *Compare* ECF No. 27-6 *with* ECF No. 33-5.

Given the defendant's failure to identify the 15.1 hours which it challenges, I can easily conclude that there is no showing made concerning the entries for 4.6 hours that do not appear to use the term "office work." In the absence of any showing by the relator about the nature of the "office work" that does appear on the billing summary, I agree with the defendant that the entries described solely as "office work," a total of 3.5 hours, should be excluded from the recovery. The entries for the remaining 7.0 hours include other activities as well as "office work," and I conclude that a reduction of 50% in those hours would be reasonable. None of the case law cited by the defendant, Opposition at 5, requires that, when one activity among a series of activities billed to a single block of time is inadequately specified, the entire block of time must be disallowed.

### 7. Petruccelli, Martin & Haddow Associate Time

The defendant raises the same objection to 25.7 hours billed by Kimberly A. Watson,[7] an associate attorney, that it first raised against 1.2 hours of Haddow's time: that a relator cannot recover fees "related to research performed on a party whom he did not prevail against[,]" in this case, Griffin. *Id.* at 5-6. The entries for September 17, September 18, September 19, and September 30, 2014, ECF No. 27-6 at 1, do not establish that the research performed on those dates was "performed on" Griffin or directed solely to claims asserted against him. In addition, as I have already mentioned, Haddow's initial declaration explains the necessity of such activities. First Haddow Decl. ¶ 15.

The remaining two entries, for September 22 and 24, 2014, do appear to relate in large part to claims against Griffin and the possible effects of his impending death on those claims. Haddow's affidavit does not explain how that work benefited the claims against Belcon as well. The 1.1 hours charged for September 24 and half of the 5.70 hours charged for September 22, which included "[d]raft memo re surety liability on performance bonds," which has not been shown to apply solely to claims asserted against Griffin, will be deducted.

### 8. Hourly Rates

The defendant does not object to the hourly rates charged by Petruccelli, Martin & Haddow. Objection at 6. Accordingly, the fees to be awarded to the relator for the work performed by that firm exclusive of time spent on the motion for an award of attorney fees total $14,662.75. That figure is reached by deducting the total of hours for Haddow's time at $240 to $265 per hour, depending on the date of each charge, for Haddow; deducting the result of multiplying 0.2 hours

---

[7] The opposition identifies these entries as being dated September 17-30, 2015. Opposition at 5. A review of the billing summary demonstrates that the entries are actually dated September 17-30, 2014. ECF No. 27-6 at 1.

for partner's time by $360 for Gerald F. Petruccelli; and deducting the indicated hours for associate's time multiplied by $135 for Watson.

The matter is more complicated for the adjusted total hours billed by Phillips & Cohen and Constantine Cannon. The defendant contends that the hourly rates awarded to those firms should be no higher than those awarded to Petruccelli, Martin & Haddow, which it characterizes as the prevailing rates in this district. Opposition at 6-8. The relator, not surprisingly, responds that the special expertise of McCormack and the employees of the two out-of-state firms who worked with him on this case was necessary for this "complex litigation," and that no law firm in Maine "has a successful track record representing FCA whistleblowers." Reply at 1-2.

The lodestar method of calculating fee award multiplies the number of hours reasonably expended by a reasonable hourly rate, which is defined as "the prevailing market rate in the relevant legal community for similar services by lawyers of reasonabl[y] comparable skills, expertise, and reputation." *United States v. Rosin*, No. 8:04-cv-349-T-30MAP, 2009 WL 580321, at *1 (M.D. Fla. Mar. 6, 2009) (citation omitted) (False Claims Act case).

The relator asserts that "[t]he unusual nature of False Claims Act litigation necessitates retention of a specialist," listing "peculiar jurisdictional issues," "peculiar procedural litigation dynamics," and "peculiar defenses and responses to defenses" as the particular aspects of such litigation that can only be handled by FCA specialist attorneys. Motion at 7-8. He then states that his "FCA counsel are among the most prominent members of the FCA bar," and that there are no FCA specialists practicing principally in Maine. *Id*. at 8. This assertions do not necessarily mean that the relator should recover fees at whatever hourly rate his national counsel may choose to charge.

The defendant agrees that courts will approve an hourly rate for out-of-state attorneys if the complexities of the case require the particular expertise of non-local counsel. Opposition at 6. However, it contends that no particular expertise was required in this case, "which involved no discovery, motions or litigation of novel or complex legal issues." *Id*. at 7. It asserts that "[t]here were no procedural hurdles or defenses to overcome, and the Government prosecuted and promptly settled this case with little help from the Relator or opposition from Belcon." *Id*. It cites *United States v. IBM Corp.*, 992 F.Supp. 137, 143 (N.D.N.Y. 1998), for the proposition that out-of-town hourly rates are awarded only in exceptional cases, as where it is shown that local counsel were unwilling to take the case, or in other "special circumstances," and only when the court is presented with an adequate evidentiary basis on which to fix such rates. Contrary to the relator's suggestion, Reply at 2, it is his burden to show that such special circumstances exist and not the burden of the defendant to demonstrate that they do not.

The relator's evidentiary submissions establish that the hourly rates stated in the invoices attached to various affidavits are "the regular hourly rates [Constantine Cannon] was charging generally" during the relevant time period," and were "consistent with the rates charged by other comparable national firms for lawyers with comparable skill and experience handling similar work[,]" First McCormack Decl. ¶¶ 5, 7; that the hourly rates reflected on the Phillips & Cohen time summary "are the regular hourly rates Phillips & Cohen LLP was charging generally for the lawyers whose time entries appear on [the summary] during the time period covered by [the summary]" and that these rates are "consistent with the rates charged by other comparable national firms for lawyers with comparable skill and experience handling similar work[,]" First Hasegawa Decl. ¶¶ 5, 7; and that a lawyer who is a resident of Maine and a former trial counsel for the United States Department of Justice who handled False Claims Act cases exclusively says that there are

no FCA law firms practicing principally in Maine and that the hourly rates charged by Phillips & Cohen and Constantine Cannon in this case "are more than reasonable" and are "at or below the hourly rates charged by other national FCA firms for similar services by lawyers with similar experience and expertise doing comparable work," Declaration of Lani Anne Remick, Esquire[,] in Support of Relator's Motion for Award of Attorneys' Fees and Expenses (ECF No. 27-7) ¶¶ 5-6.

Constantine Cannon bills $675 per hour for McCormack in 2015 and $725 in 2016; $300 for Max Voldman, an associate; and $345 for Knobler. ECF No 27-2 at [1]. Phillips & Cohen bills $675 per hour for McCormack; $725 for Mary A. Inman, a partner; $380 for Knobler, $300 and $360 for David Jochnowitz, an associate; $300 for Janice Kelly, a paralegal; and $200 for Benjamin F. Chaiken, a paralegal. ECF No. 27-4 at 1 {52).

In *Maceira v. Pagan*, 698 F.2d 38 (1st Cir. 1983), an action brought under the Landrum-Griffin Act cited by the relator, the First Circuit said that "an out-of-town specialist may be able to command a somewhat higher price for his talents, both because of his specialty and because he is likely to be from a larger city, where rates are higher[,]" and that, when a specialist attorney is needed, "there is no basis for concluding that the specialist's ordinary rate is unreasonably high." *Id*. at 40. More recently, in a RICO case arising in this district, the First Circuit modified this position, stating that the proper rate to apply to the work of out-of-town counsel when using the lodestar method "is that of the forum community" unless the case required the particular expertise of the non-local counsel or the case was an undesirable one which local attorneys were not willing to prosecute or defend. *Williams v. Poulos*, Nos. 94-2057, 94-2058, 54 F.3d 764 (Table), 1995 WL 281451, at *4 (1st Cir. May 12, 1995). This court will approve an hourly rate for out-of-state counsel in excess of that prevailing in Maine for a comparably credentialed attorney only if the

attorney requesting that rate has particular expertise that is not readily available in the local market. *Desena v. LePage*, 847 F.Supp.2d 207, 215 (D. Me. 2012) (refusing to pay higher rate for out-of-state associate attorneys for whom no showing of particular expertise had been made).

The highest hourly rate charged by Petruccelli, Martin & Haddow in this case, for a very experienced and highly competent partner, is $360. The relator argues that he is entitled to use lawyers charging twice as much due to the nature of False Claims Act litigation; there is no suggestion in his submitted materials that this particular case was more complex or challenging than any other such case, and the defendant plausibly suggests that it was in fact less so. While McCormack and Hasegawa state that their respective firms' rates are consistent with those of other "national" FCA firms, the only facially independent evidence they offer on this point is the Remick declaration. My own research in reported FCA cases does not support her statement that the rates charged by McCormack, his former partner, and his associates in this case are "at or below" the hourly rates charged by similar lawyers in similar cases.

Thus, in *United States v. Community Health Sys., Inc.*, No. Civ.A. H-09-1565, 2015 WL 3386153 (S.D. Tex. May 4, 2015), an FCA specialist lawyer sought an award of fees at $800 per hour, averring that this rate was reasonable. *Id*. at *18. Noting that a judge in that district had, as recently as 2014, held that a range of $200 to $600 per hour in FCA cases was reasonable "after considering the experience of the lawyer, the reputation of the firm, and the complexity of the case," that the defendants cited "national *qui tam* cases in which courts have recently approved hourly rates for experienced attorneys ranging from $375 to $600[,]" and that the relator offered no evidence that any *qui tam* lawyer had ever been awarded $800 per hour anywhere in the country, the presiding judge limited the top hourly rate for the relator's attorneys to $550 per hour.

Similarly, in *United States v. Acupath Lab., Inc.*, No. CV 10-4819, 2015 WL 1293019 (E.D.N.Y. Mar. 19, 2015), the trial judge, noting that the Medicaid fraud involved in the case "is a typical kind of fraud covered by the FCA[,]" and that the requested rates of $500 to $850 for various lawyers were higher than the upper limit of $350 in that district which was "generally reserved for the unusually expert litigation or other special circumstances[,]" the court awarded fees at hourly rates of $250 to $600. *Id*. at *9-*10. These rates were approved after the court

> acknowledge[d] that *qui tam* litigation under the False Claims Act is a specialized area of law with which only a small number of practitioners are familiar. Likewise, such practice requires knowledge of procedural rules which do not apply in other types of litigation. However, this case is not so unusual or complex as to warrant applying what amounts to higher out-out-district rates sought by the Relator here.

*Id*. at *10.

I find these recent cases from other jurisdictions to be persuasive. On the showing made, on the Phillips & Cohen bill, I will reduce McCormack's hourly rate to $550 per hour and the rate for Inman, for whom no evidence of expertise or experience has been submitted, to $500 per hour. The rates for the associates, for whom particular evidence is similarly lacking, will be reduced to $250 for Jochnowitz and $300 for Knobler. For the paralegals, whose time is billed at $200-300 per hour, and who are not mentioned in the relator's motion or reply, a rate more like that in effect in this district will be applied--$95 per hour.

On the Constantine Cannon bill, where Knobler's hourly rate is lower than that charged by Phillips & Cohen, although more recent in time, a rate of $300 will also be applied. The hourly rate of Voldman, an otherwise unmentioned associate, will be reduced to $250 per hour, and McCormack's rate will be reduced to $550 per hour in 2015 and $600 per hour in 2016.

### 9. Requested Downward Adjustment of Lodestar Amount

The defendant requests that the calculated lodestar amount be further reduced by one-third to reflect the relator's failure to prevail on his claims against Griffin and JCN Construction, Inc. and the fact that the lodestar amount "is disproportionately larger than the level of success achieved by the plaintiff." Opposition at 9. It states that the government only intervened on the relator's claims against Belcon, none of the settlement proceeds were attributed to Griffin or JCN, and the relator dismissed his claims against Griffin and JCN with prejudice. *Id.* There was also a claim against Belcon based on its use of a certain adhesive in which the government did not intervene. *Id.* Finally, the defendant points out that the relator "received only $79,110 of the $439,500 settlement—*less* than the amount of fees claimed by his attorneys." *Id.* at 10 (emphasis in original). The relator does not address this request in his reply memorandum.

This court recognizes a "strong presumption" that the lodestar figure is reasonable. *IMS Health Corp. v. Schneider*, 901 F.Supp.2d 172, 200 (D. Me. 2012). The lodestar figure is subject to upward or downward adjustment to reflect the degree of success in the litigation of the party seeking a fee award. A party that establishes that claims on which it did not prevail were based on a common core of facts with those claims on which it did prevail, or that related legal theories supported claims with both outcomes may obtain complete compensation for the work pertaining to such facts or theories. *Okot v. Conicelli*, 180 F.Supp.2d 238, 243 (D. Me. 2002).

In this case, the original complaint asserted only one count, against all three named defendants. Complaint for Violations of the Federal False Claims Act [31 U.S.C. §§ 3729 et seq.] ("Complaint") (ECF No. 1) at 14-16. Therefore, the claims against Griffin and JCN Construction could not reasonably be deemed "unrelated" to the claims against Belcon and accordingly provide

no basis for reducing the lodestar amount. *Gross v. Sun Life Assurance Co.*, 105 F.Supp.3d 130, 135 (D. Mass. 2015). Most of the legal work billed would have been necessary even if Griffin and JCN had not been named defendants. *See, e.g., J.J.R. Distrib. Corp. v. Sandler Bros.*, Civil No. 09-210-P-S, 2010 WL 1064729, at *3 (D. Me. Feb. 23, 2010).

In addition, Griffin was the principal of Belcon and JCN Construction was the general contractor on one of the projects that are the subject of this action, on which Belcon was a subcontractor. Complaint ¶¶ 11, 17, 49-50. As the relator points out, Motion at 6, some research was necessary to determine whether a judgment against Griffin or JCN would be collectible. *J.J.R.*, 2010 WL 1064729, at *3.

The defendant's contention that the lodestar amount should be reduced by a third is not persuasive. No further reduction in the lodestar amount should be made.

### 10. Fees Incurred in Connection with the Motion

Finally, the relator seeks to recover "the reasonable fees and expenses incurred in preparing and litigating this Motion for Attorneys' Fees and Expenses[,]" Motion at 2, totaling $24,366.75. Exh. A to Supplemental Declaration of Timothy P. McCormack, Esquire[,] in Support of Relator's Motion for Award of Attorneys' Fees and Expenses (ECF No. 33-8); Exh. A to Supplemental Declaration of Stephen S. Hasegawa, Esquire[,] in Support of Relator's Motion for Award of Attorneys' Fees and Expenses (ECF No. 33-2); Exh. B to Supplemental Declaration of James B. Haddow, Esquire[,] in Support of Relator's Motion for Award of Attorneys' Fees and Expenses ("Second Haddow Decl.") (ECF No. 33-6).

While it is true that successful litigants in fee-shifting cases are entitled to recover for attorney time spent in preparing and litigating motions for fee awards, it is also true that "[T]ime spent on fee litigation is compensated at lower rates than those deemed reasonable for the main

litigation." *IMS Health Corp. v. Schneider*, 901 F.Supp.2d 172, 199 (D. Me. 2012) (citation and internal punctuation omitted). "In other cases, this District has substantially reduced the hourly rates for fee motion work." *Id.* All entries in the request submitted by the relator are made at the respective attorney's regular hourly billing rate, ranging from $265 to $725.

The relator asserts, in conclusory fashion that the instant motion "self-evidently has required considerably more than simple documentation, so lawyer time spent on it should be compensated at the lawyers' customary hourly rates." Motion at 6. To the contrary, nothing about the motion suggests any efforts beyond those customarily applied to any motion for an award of attorney fees were made, nor that there was any need for such efforts. Perhaps recognizing the likelihood that this assertion would not carry in the District of Maine, the relator proceeds to contend that, if some reduction is deemed appropriate by the court, the $200 per hour applied by this court in *Sullivan v. City of Augusta*, 625 F.Supp.2d 28, 48-49 (D. Me. 2009), "is no longer appropriate" and a hourly rate below that "would fail adequately to reflect work done by a competent local lawyer to prepare an uncomplicated fee motion." Motion at 6.

The first problem for the relator with this argument is the fact that this court applied an hourly rate of $150 in this context in 2012. *IMS Health*, 901 F.Supp.2d at 199. Attorney Haddow states in his supplemental declaration that "hourly rates for experienced lawyers handling sophisticated litigation have generally increased during [the past seven years], particularly over the past three to four years[,]]" Second Haddow Decl. ¶ 7, but nothing about the work on the fee petition in this case appears to qualify as "sophisticated litigation."

Accordingly, I recommend that all partner attorney time incurred in connection with the fee petition, a substantial total of 57.95 hours, be included in the award at $200 per hour, and that the associate attorney and paralegal time included in the Haddow declaration be included in the

award at the stated rates of $150 per hour for 9.7 hours and $75 per hour for 7.2 hours. This generates a total award of $13,585 associated with the fee petition itself.

## II. Conclusion

For the foregoing reasons, I recommend that the relator's motion for an award of attorney fees be **GRANTED IN PART**, in the total amount of $65,771.25, representing $52,186.25 for the litigation itself and $13,585 for the preparation and litigation of the motion for the award. The request for reimbursement of costs should be directed to the Clerk of this court to be determined pursuant to the limits set forth in this recommended decision.

### *NOTICE*

*A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which de novo review by the district court is sought, together with a supporting memorandum and request for oral argument before the district judge, if any is sought, within fourteen (14) days after being served with a copy thereof. A responsive memorandum and any request for oral argument before the district judge shall be filed within fourteen (14) days after the filing of the objection.*

*Failure to file a timely objection shall constitute a waiver of the right to de novo review by the district court and to appeal the district court's order.*

Dated this 30th day of December, 2016.

/s/ John H. Rich III
John H. Rich III
United States Magistrate Judge